This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**NO. 34,386**

**RAMON O.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**John J. Romero, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1}    This appeal arises from the events that followed Albuquerque Police Department's (APD) attempt to execute a warrant on Ramon O.'s (Child) uncle (Uncle). As a result of Child's interactions with APD, the State charged Child with disorderly conduct, in violation of NMSA 1978, § 30-20-1(A) (1967), defining "disorderly conduct", in relevant part, as "engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace[.]" The Children's Division of the Second Judicial District Court held a bench trial, and the State presented two witnesses, APD Officers Russell Parea and Cassandra Bailey. Following the bench trial, the district court found that Child committed the delinquent act of disorderly conduct. Child was placed on supervised probation for a period of approximately one year. Child appeals his conviction asserting that: (1) the district court misapplied Section 30-20-1(A); (2) there was insufficient evidence to support his conviction ; (3) his conviction is unconstitutional; and (4) the district court erred in denying his motion for a directed verdict. As explained herein, we determine: (1) the district court improperly applied Section 30-20-1(A), and (2) there was insufficient evidence to sustain Child's conviction. Accordingly, we reverse the conviction.

**BACKGROUND**

{2} At the time APD arrived to execute the warrant on Uncle, Child and his brother were located inside the residence with Uncle. While Child and his brother voluntarily exited the premises, Uncle refused to comply with APD orders to exit the residence. Law enforcement established a perimeter around the residence, and the two brothers were escorted by officers outside the established perimeter. Law enforcement utilized a public announcement system to order Uncle to exit the residence and to instruct neighborhood residents to remain inside their homes. Eventually, APD dispatched a SWAT team to oversee the scene. The SWAT team was forced to utilize tear gas and loud equipment that the officers stated could have been "flash bangs."

{3} At trial, Officer Parea testified that once the brothers were escorted outside the established perimeter, he observed Child and his brother ignoring the orders of Officer Bailey. The officer testified the boys used profanity toward her, "flipped her off", refused to remain outside the perimeter, ran around the neighborhood yelling, persisted in trying to enter the residence, and invariably distracted law enforcement. While Officer Parea stated that he had no direct contact with the two brothers and testified that he heard, "f— you. . . . Get the f— out of here," he was not entirely certain which one of the brothers made the remark.

{4} Officer Bailey confirmed much of Officer Parea's testimony, and she elaborated that Child, his brother, and another family member were yelling and screaming in a

3

proximity close enough to her that they made her uncomfortable as they "could have run up on [her] or thrown something at [her]." She stated that they were argumentative, cussing, and "flipped her off" as well. Officer Bailey testified that Child and his brother were yelling to neighbors saying, "Look what they're doing!" In an attempt to de-escalate the situation, Officer Bailey moved Child and his brother around the corner, but Child and his mother returned with a group of eight to ten individuals. The group of people were "getting each other upset" and communicating amongst themselves that they should refuse to cooperate with law enforcement. Officer Bailey testified that while she never needed to restrain Child, the situation with the larger group became so serious and "concerning" that she was forced to call backup officers.

{5} Officer Bailey stated that while she had cause to place Child under arrest for his behavior at the scene, she chose not to because she did not want to escalate the general situation. She stated that the behavior of Child and his brother caused a small child to "pretend[] like he was shooting police officers with a pump action shotgun" and caused another child to throw a bag of chips. When asked to characterize Child's language at the scene, she recalled that Child "flipped her off" but could not recall specific statements he made, just that he was cussing and yelling. On cross

4

examination, however, Officer Bailey stated that she could not recall if Child "flipped her off."

{6}     Once the State rested its case, Child moved for a directed verdict, arguing that the State must prove two elements in order to obtain a conviction for disorderly conduct. Child argued that the State failed to prove: (1) the second legal element of "tend[s] to disturb the . . . peace," especially given the intensity of the police situation; and (2) that the acts engaged in by Child were sufficient to meet the proscribed conduct for disorderly conduct. The district court denied the motion, finding that there was sufficient evidence on the record to continue with the trial. Child did not present any further witnesses.

{7}     Following closing arguments, the district court orally held that "the reading of the statute is clear that not all of the elements [of the statute] need to be proved." The court found that there was insufficient evidence that Child engaged in violent behavior, boisterous or abusive conduct, and stated that it was not sure what "unreasonably loud" conduct meant in the context of the situation without actually being present at the scene. However, the district court found that there was "plenty of testimony that [established] that a lot of profanity was being used" and Child "was identified . . . as engaging in cursing and in flipping off [the officers]." As such, the

5

court found that Child "engaged in profanity and in behavior and in language that could otherwise be defined as profane."

**{8}** The district court continued, holding that whether Child's conduct "tended to disturb the peace is hard to distinguish, hard to define [because] arguably there was very little peace at the time [of the incident]. It was chaotic at best." The court noted, without making a ruling as to Child's guilt, that it was not "sure how [this fell] into the [statutory] definition" of disorderly conduct, because Child "wasn't contributing to establishing or maintaining peace." It then clarified that this failure to contribute to establishing or maintaining peace was "not the same as tending to disrupt the peace." The district court nonetheless found that there was "evidence beyond a reasonable doubt that . . . [Child be] adjudicated a delinquent child as to [Section] 30-20-1 in that he did engage in profane and indecent conduct."

**{9}** Counsel for Child pressed the court to clarify its ruling as to the "tend[s] to disturb the peace" element of the statute, noting that the court's ruling only addressed the first "conduct" element. The district court stated that it was "not persuaded that there [were] two elements." It explained that it understood "tends to disturb the peace" solely to modify the wording "otherwise disorderly conduct." Defendant's counsel directed the court to caselaw again explaining that there are two elements to the statute and "in order to [have] disorderly conduct, you have to satisfy both." The court

6

responded, stating "I made my ruling counsel." As a result of the conviction, the district court placed Child on probation "for a full term not to exceed [one] year." Child timely appealed his conviction.

**DISCUSSION**

**I.      Disorderly Conduct: Section 30-20-1(A)**

{10}     Child first argues that the district court misapplied Section 30-20-1(A), the statute defining disorderly conduct. Child contends that the district court erred in finding that the statute solely contains one element and in failing to consider the second of the two statutory elements. The "State concedes that Child is correct that the district court misunderstood and misapplied the law governing disorderly conduct by holding that it was unnecessary to find that Child's behavior had a tendency to disturb the peace." "Although the [s]tate concedes this issue, we are not bound to accept the [s]tate's concession." *State v. Palmer*, 1998-NMCA-052, ¶ 12, 125 N.M. 86, 957 P.2d 71. We review this issue of statutory interpretation de novo. *State v. Smith*, 2009-NMCA-028, ¶ 8, 145 N.M. 757, 204 P.3d 1267.

{11} This is not the first time we have been called upon to consider the elements of this statute, and we have previously determined that the disorderly conduct statute "has two elements: the conduct itself and the tendency of the conduct to disturb the peace." *State v. Salas*, 1999-NMCA-099, ¶ 12, 127 N.M. 686, 986 P.2d 482. Our Supreme Court recently reiterated this Court's conclusion, and articulated that in order to sustain a conviction for disorderly conduct, both of the above stated elements must be present. *State v. Correa*, 2009-NMSC-051, ¶ 21, 147 N.M. 291, 222 P.3d 1. Thus, it is clear and undisputed that the district court erred in ruling that: (1) not all of the elements of the statute need to be proved and (2) only one element, the improper conduct element, meets the requirements to establish disorderly conduct under the statute.

{12} When the fact finder fails to address all the elements of a criminal offense, the remedy on appeal would require a remand for retrial, unless double jeopardy principles prevent retrial. *See State v. Consaul*, 2014-NMSC-030, ¶ 41, 332 P.3d 850 ("To avoid any double jeopardy concerns, [our appellate courts] review the evidence presented at the first trial to determine whether it was sufficient to warrant a second trial."); *State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 (recognizing that retrial is appropriate where the jury instructions were defective and sufficient evidence was presented to support a conviction); *State v. Rosaire*, 1996-

8

NMCA-115, ¶ 20, 123 N.M. 250, 939 P.2d 597 (holding "that where the [district] court errs by failing to instruct the jury on an essential element of the crime, retrial following appeal is not barred if the evidence below was sufficient to convict the defendant"). The State asserts that retrial is the appropriate remedy so long as sufficient evidence exists to establish all the elements of the crime. Defendant does not dispute the State's legal position regarding retrial but continues to argue that insufficient evidence was presented to establish "that [Child's] conduct constituted disturbing the peace." As a result, we shall now proceed to address whether the State presented sufficient evidence to establish both elements of the disorderly conduct statute.

**II.      Sufficiency of the Evidence: "Tends to Disturb the Peace"**

{13}      Child contends that there was insufficient evidence to sustain his conviction regarding the second element of disorderly conduct—conduct that tends to disturb the peace. "When reviewing a verdict for sufficiency of the evidence, our role is to determine whether a rational fact[]finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. "In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and

9

inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. However, where the verdict is supported by substantial evidence, we will not disturb it on appeal. *Id*.

**{14}** Again we point out that Section 30-20-1(A) contains two elements: (1) the conduct is "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly[,]" and (2) the "conduct . . . tends to disturb the peace." *Correa*, 2009-NMSC-051, ¶ 21. While the Legislature has not specifically defined "disturbing the peace," our Supreme Court has defined it as "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *State v. Florstedt*, 1966-NMSC-208, ¶ 7, 77 N.M. 47, 419 P.2d 248 (internal quotation marks and citation omitted). This Court determined that the appropriate standard for this statutory analysis "is whether [the] defendant's conduct tends to disturb the public peace." *State v. James M.*, 1990-NMCA-135, ¶ 15, 111 N.M. 473, 806 P.2d 1063 (emphasis omitted). "Conduct which tends to disturb the peace is that conduct which is inconsistent with the peaceable and orderly conduct of society." *Id*. ¶ 14 (internal

quotation marks and citation omitted). Our Supreme Court has instructed that we construe the disorderly conduct statute narrowly and, "unless the acts [that are alleged] fall clearly within the statute, they are not disorderly." *Correa*, 2009-NMSC-051, ¶ 22 (alteration, internal quotation marks, and citation omitted).

{15}    On appeal, Child does not dispute the district court's finding that he engaged in profane and indecent conduct under the first element of the statute but argues that "there is no evidence [Child's] conduct 'tended to disturb the peace.' " Accordingly, we are only called upon to analyze the sufficiency of the evidence with regard to the second element of the statute. *See* § 30-20-1(A); *Correa*, 2009-NMSC-051, ¶ 21. We first turn to the definition of "disturbing the peace" as adopted in *Florstedt*, 1966-NMSC-208, ¶ 7. This definition was also identified in *Correa*, 2009-NMSC-051, ¶ 31, and stated that there are three categories of conduct that may satisfy the second element of disorderly conduct: "(1) an actual act of violence; (2) an act likely to incite another to violence; and (3) an act that disturbs the peace and tranquility of the community."

{16}    The district court explicitly found that there was insufficient evidence to prove that Child engaged in violent behavior. The State does not contest this finding. Thus, we must determine whether there was sufficient evidence presented at the trial to establish that Child engaged in "an act likely to incite another to violence [or] an act

11

that disturbs the peace and tranquility of the community." *Correa*, 2009-NMSC-051, ¶ 31. The State argues that Child disturbed the peace in his "consistent approach to and breach of the police perimeter in order to make profane statements and indecent gestures at police" as a reasonable fact finder could find that this conduct "had the tendency to cause consternation and alarm among the police officers." As we discuss below, the evidence presented at trial was insufficient to support Child's conviction on this ground.

**A.      Child's Conduct Toward Law Enforcement**

{17}    This Court has previously held that "[p]olice officers, by nature of their training, are generally expected to have a higher tolerance for offensive conduct and language." *James M.*, 1990-NMCA-135, ¶ 17. Our Supreme Court and this Court have applied the rule that in most instances "arguing with a police officer, even when using profane and insulting words, will not be enough to constitute disorderly conduct, unless the words are coupled with threatening behavior." *Correa*, 2009-NMSC-051, ¶ 26 (internal quotation marks and citation omitted); *see Salas*, 1999-NMCA-099, ¶ 20 (affirming a conviction for disorderly conduct where the defendant's profane language was accompanied by the defendant approaching law enforcement with clenched fists); *State v. Hawkins*, 1999-NMCA-126, ¶¶ 19-20, 128 N.M. 245, 991 P.2d 989 (distinguishing *Salas* and reversing the defendant's disorderly conduct conviction

where the defendant solely argued with law enforcement and did not verbalize threats or exhibit any threatening behaviors).

{18} While it is undisputed that Child used profane and indecent language and gestures toward police officers in their attempt to arrest Uncle, our review of the record does not reveal, nor does the State point to, any threatening behavior or similar conduct accompanying Child's verbal assaults. Officer Parea testified that accompanying the profane language, Child ignored Officer Bailey's orders, refused to respect the perimeter established by law enforcement, and caused a general distraction to police officers attempting to execute their duties. However, there is no evidence here to suggest any threatening conduct or behavior accompanied any perimeter breach or distraction caused by Child. Additionally, the State does not argue that Child's disrespectful behavior had an effect on the others such that it rose to the level of incitement of another. While Officer Bailey testified that Child's yelling and proximity to her caused discomfort, our Supreme Court has affirmed this Court in its determination that an officer's apprehension that an individual "might . . . become combative" was insufficient to sustain a conviction for disorderly conduct. *State v. Doe*, 1978-NMSC-072, ¶¶ 5-7, 92 N.M. 100, 583 P.2d 464 (internal quotation marks and citation omitted). Additionally, Officer Bailey testified that she never needed to restrain Child and while she believed there was cause to place Child under arrest, she

13

did not to do so. Had the circumstances threatened Officer Bailey's safety or the safety of another, she testified that arresting Child would have been appropriate, yet no arrest or other action was taken.

{19} As our Supreme Court eloquently pointed out in *Correa*, "We are not indifferent to the officers in the case." 2009-NMSC-051, ¶ 30. These officers play an invaluable role in serving and protecting our community, and unfortunately, they are often subjected, as they were here, to inappropriate verbal abuse and unsightly gestures. We commend these officers for their restraint and their ability to carry out their duties under taxing, distracting, and often debasing conditions. "However, it is because of their degree of skill, training, and experience that we rely on officers," not only to complete their duties, but "not to react to verbal provocation, at the risk of escalating a situation rife with conflict." *Id*. Accordingly, without evidence of anything more than profane remarks, gestures, and non-threatening refusal to comply with the perimeter established by police, there is insufficient evidence to support Child's conviction with regard to his disrespectful conduct toward law enforcement.

**B.      Disturbing the Tranquility of the Community**

{20} On appeal, the State does not explicitly argue that Child, through his conduct, disturbed the tranquility of the community. Rather, the State takes issue with Child's argument that his "conduct was not disorderly because there was no peace in the

14

neighborhood during the police standoff." While the State theoretically could have presented evidence to support this argument, it was not supported by the record below and has not been addressed by any authority in the State's brief. "On appeal, issues not briefed are considered abandoned, and we do not raise them on our own." *Id.* ¶ 31. There is no evidence or argument below to dispute the district court's finding that "arguably there was very little peace at the time [of the incident, it] was chaotic at best." As such, we accept this undisputed finding and shall only briefly address the State's argument regarding the tranquility of the community at the time of the incident involving Uncle.

{21} At trial, the State presented evidence through the testimony of Officers Parea and Bailey that Child: ran around the neighborhood yelling, yelled to a neighbor, brought a small group of people to the scene, yelled loud enough so that the neighbors were able to hear, caused a child to pretend to shoot officers, and caused another child to throw a bag of chips. However, the State does not argue that Child's behavior tended to disturb the "chaotic" atmosphere described as "very little peace" existing in the surrounding neighborhood or community at the time of the incident. Rather, the State asserts that Child's disturbances irritated and bothered law enforcement while they were carrying out their duties at this chaotic scene. As the State recognizes, the district court never found that Child's conduct tended to disturb the peace, especially

15

within the chaotic atmosphere that existed at the time. No evidence was presented that Child caused the chaotic and tense scene that developed around Uncle's arrest or that the neighbors or the community were disturbed by Child's actions or conduct. While there was evidence presented that Child yelled at a neighbor and may have brought other individuals to the scene, it is unclear from the record whether the neighbor was "negatively affected by or reacted in any way to the statements." *Hawkins*, 1999-NMCA-126, ¶ 13 ("The mere fact that people may have heard [Child's] remarks, however loud or offensive they may have been, is insufficient to support a charge of disorderly conduct. There must be evidence that the remarks were likely to incite the listeners to breach the peace."). No evidence was presented that these other neighbors breached the peace. The evidence presented did not indicate whether the individuals that Child may have brought to the scene were family members concerned about Uncle or simply unrelated neighbors reacting to Child's behavior. *See id.* In fact, Officer Bailey explicitly testified that she was unsure whether the individuals Child brought over to the scene were neighbors. Because the evidence does not support the State's argument that Child's behavior tended to disturb the peace of the neighborhood, we decline to consider this argument any further. *See Correa,* 2009-NMSC-051, ¶ 32 (declining to reach the argument of whether a defendant's conduct

tended to disturb the tranquility of the community where the State failed to present the argument on appeal and such a "conclusion [was] not apparent from the record").

{22} The State requests that we remand Child's case to the district court for reconsideration of the "tends to disturb the peace" element of the statute and for a new trial. As we have determined that there is insufficient evidence as to the first conviction, we need not remand for reconsideration or a new trial. *See State v. Roper*, 2001-NMCA-093, ¶ 23, 131 N.M. 189, 34 P.3d 133 ("If there was insufficient evidence to support the [charge] for which [the d]efendant was convicted and sentenced, the remedy would be a discharge, not a new trial."). Accordingly, we reverse and do not permit any retrial in this case.

## III. Child's Constitutional Arguments

{23} Finally, Child contends that his conviction was unconstitutional as his conduct was protected under the First and Fourteenth Amendments of the United States Constitution and Article II, Section 17 of the New Mexico Constitution. "[Our appellate courts] will avoid deciding constitutional questions unless required to do so." *State v. Sanchez,* 2015-NMCA-084, ¶ 8, 355 P.3d 795 (internal quotation marks and citation omitted). As we have already determined that there was insufficient evidence to sustain Child's disorderly conduct conviction, we need not reach Child's constitutional arguments. *See Schlieter v. Carlos*, 1989-NMSC-037, ¶ 13, 108 N.M.

17

507, 775 P.2d 709. ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so.").

**CONCLUSION**

**{24}**     For the foregoing reasons, we reverse Child's conviction. We remand this matter to the district court with instructions to dismiss Child's disorderly conduct conviction with prejudice.

**{25}**     **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**