This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                        **No. 34,558**

**JESUS B.**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1}     Jesus B. (Child) appeals his adjudication as a delinquent child, made on the basis that he committed disorderly conduct in violation of NMSA 1978, Section 30-20-1(B) (1967).[1] Child argues that his adjudication as a delinquent child must be overturned because the evidence was insufficient to support the finding that he committed disorderly conduct and his statements to a police officer were improperly admitted. We hold that the evidence was insufficient to support Child's disorderly conduct conviction. Accordingly, we reverse both the judgment that Child violated Section 30-20-1(B) and the adjudication grounded in that violation, that he was a delinquent child. We do not reach Child's other argument.

**BACKGROUND**

{2}     Because we reach only Child's sufficiency of the evidence issue, we focus the following background discussion on those facts relevant to that issue.

{3}     The sole witness at Child's adjudicatory hearing was Sergeant Ricardo Huerta (Huerta), a police officer for the City of Artesia. Huerta testified that he was

[1]Child was charged with violating, and as we stated, adjudicated to be in violation of, Section 30-20-1(B). However, at Child's adjudicatory hearing, the State proceeded under a theory that Child violated Section 30-20-1(A), and the special master found that Child violated that section. Although Child challenged the State's shift from subsection (B) to subsection (A) at the adjudicatory hearing, Child does not raise it as an issue on appeal. Instead, Child challenges the sufficiency of the evidence to find that he violated Section 30-20-1(A). Accordingly, we undertake an analysis related to the violation of Section 30-20-1(A).

dispatched to a business address in downtown Artesia in response to a report of children throwing rocks. It was early evening when Huerta arrived, but still light. Standing near a carport at the rear of the property, Huerta heard "little . . . bangs . . . or noise coming from the metal roof like . . . little pellets or BB guns striking the top of the metal roof and . . . hitting the ground[.]" Huerta was unable to access the roof of the adjacent building, so he called for assistance from the fire department. Child descended from the roof as the fire department arrived, in possession of a little plastic gun and a bag with candy and plastic ammunition. Huerta testified that in the course of investigating "what was going on," Child told him that Child and another child were "shooting targets up on the top of the roof." Huerta testified that he then called Child's grandmother and cited Child for firing the BB gun within the city limits and trespass. An adjudicatory hearing resulted in a finding that Child committed disorderly conduct in violation of Section 30-20-1(A). Subsequently, the children's court held a dispositional hearing. Pursuant to that hearing, the children's court adopted the finding that Child committed disorderly conduct and found that Child was a delinquent child. Child appealed.

**SUFFICIENCY OF THE EVIDENCE**

**{4}** When reviewing for sufficiency of the evidence we view the evidence in the light most favorable to the verdict, indulge all reasonable inferences and resolve all conflicts in favor of the verdict, and then ask: could any reasonable factfinder have found beyond a reasonable doubt all essential elements required for a conviction? *State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245.

**{5}** Our disorderly conduct statute is construed narrowly, so, "unless the acts complained of fall clearly within the statute, they are not disorderly." *State v. Correa*, 2009-NMSC-051, ¶ 22, 147 N.M. 291, 222 P.3d 1 (alteration, internal quotation marks and citation omitted). Disorderly conduct is defined under Section 30-20-1(A) as, in relevant part, "engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace[.]" That definition comprises two distinct elements, both of which are essential: the conduct and the tendency of that conduct to disturb the peace. *Correa*, 2009-NMSC-051, ¶ 21.

**{6}** We analyze first whether there was substantial evidence that Child's conduct has a tendency to disturb the peace. Disturbing the peace is "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm[,] disturbs the peace and quiet of the community."

4

*Id.* ¶ 22 (internal quotation marks and citation omitted). Conduct that tends to disturb the peace is that "which is inconsistent with the peaceable and orderly conduct of society." *Id.* (internal quotation marks and citation omitted). Our Supreme Court has identified three categories of conduct that tends to disturb the peace: "(1) an actual act of violence; (2) an act likely to incite another to violence; and (3) an act that disturbs the peace and tranquility of the community." *Id.* ¶ 31; *see also State v. Florstedt*, 1966-NMSC-208, ¶¶ 7,10, 77 N.M. 47, 419 P.2d 248 (stating that acts of violence, acts likely to incite violence, and acts that by causing consternation and alarm disturb the peace and quiet of the community, tend to disturb the peace).

{7}     The State does not argue that Child committed an act that was violent or likely to incite violence, thus we examine only whether Child committed an act that disturbed the peace and tranquility of the community. What did Child do? For one thing, Child generated noise: Huerta heard little bangs or noise coming from the metal roof, as though from "little pellets or BB guns striking the top of a metal roof and . . . hitting the ground[.]" Also, Child shot a plastic gun that discharged plastic ammunition on a roof. The question we face is whether those acts disturbed the peace and tranquility of the community.

**{8}** As a preliminary matter, we address whether the location of Child's actions is relevant to our analysis. In other words, is disorderly conduct a crime that is at all relative to the particular location or circumstances where the alleged violation occurred? We conclude that it is. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 924 (10th Cir. 2015) (emphasizing the relevance of setting when analyzing whether there was reasonable suspicion of disorderly conduct in an environment where "[o]rder and security are of obvious importance"); *Correa*, 2009-NMSC-051, ¶ 31 (suggesting that the "time, place, and manner" of a defendant's conduct would have been relevant to an analysis of whether the conduct tended to disturb the peace, had such an argument been raised). For example, conduct that might disturb the peace and tranquility of an airport might not have the same effect in an industrial zone. Moreover, when analyzing disorderly conduct charges for behavior directed at the police, our appellate courts have relied on the raised tolerance for abuse and offensive language that is expected of our police officers when analyzing whether a defendant's behavior was likely to incite violence. *Id.* ¶¶ 26, 30; *State v. Hawkins*, 1999-NMCA-126, ¶¶ 14-15, 128 N.M. 245, 991 P.2d 989. Thus, the specific circumstances of the accused's behavior may sometimes be relevant to the analysis of whether an act tends to disturb the peace and tranquility of the community. Accordingly, when analyzing

6

whether Child's conduct tended to disturb the peace and tranquility we consider that Child's conduct took place in a downtown, commercial district.

{9} No evidence was presented that the noise made by Child's conduct was especially loud. Given that the noise was caused by plastic ammunition shot from a plastic gun falling on a low roof or to the ground, we can think of no reason that the noise was louder than a heavy rain. Nor was evidence presented that the noise went on for a long time. We conclude that the noise created by Child does not appear to be of the kind to disturb the peace and tranquility of a commercial district in downtown Artesia.

{10} We turn to the question of whether the rooftop shooting of plastic BBs or pellets in a downtown, commercial district disturbed the peace and tranquility of the community. We first observe that the State has not cited any case as authority, or developed an argument, that Child's act of shooting—as distinct from the noise caused by the falling ammunition—was sufficient to disturb the peace and tranquility of the community. That puts the State at a disadvantage. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (stating that we will not construct a party's arguments). We also observe that state disorderly conduct statutes vary

7

considerably, *compare, e.g.*, Colo. Rev. Stat. § 18-9-106 (2014)[2] *and*

_____

[2](1) A person commits disorderly conduct if he or she intentionally, knowingly, or recklessly:

(a) Makes a coarse and obviously offensive utterance, gesture, or display in a public place and the utterance, gesture, or display tends to incite an immediate breach of the peace; or

. . .

(c) Makes unreasonable noise in a public place or near a private residence that he has no right to occupy; or

(d) Fights with another in a public place except in an amateur or professional contest of athletic skill; or

(e) Not being a peace officer, discharges a firearm in a public place except when engaged in lawful target practice or hunting or the ritual discharge of blank ammunition cartridges as an attendee at a funeral for a deceased person who was a veteran of the armed forces of the United States; or

(f) Not being a peace officer, displays a deadly weapon, displays any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon, or represents verbally or otherwise that he or she is armed with a deadly weapon in a public place in a manner calculated to alarm.

. . .

(3)(a) An offense under paragraph (a) or (c) of subsection (1) of this section is a class 1 petty offense; except that, if the offense is committed with intent to disrupt, impair, or interfere with a funeral, or with intent to cause severe emotional distress to a person attending a funeral, it is a class 2 misdemeanor.

(b) An offense under paragraph (d) of subsection (1) of this section is a class 3 misdemeanor.

(c) An offense under paragraph (e) or (f) of subsection (1) of this section is a class 2 misdemeanor.

8

Ariz. Rev. Stat. § 13-2904 (1994)[3] *with* Section 30-20-1,[4] which undermines the relevance of out of state authority to our sufficiency of the evidence issue.

{11}     Upon consideration, we do not think the peace and tranquility of downtown Artesia so fragile that it was disturbed by a young teenager shooting plastic ammunition on a roof. The only New Mexico case to have considered whether

---

[3]A. A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person:
    1. Engages in fighting, violent or seriously disruptive behavior; or
    2. Makes unreasonable noise; or
    3. Uses abusive or offensive language or gestures to any person present in a manner likely to provoke immediate physical retaliation by such person; or
    4. Makes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession; or
    5. Refuses to obey a lawful order to disperse issued to maintain public safety in dangerous proximity to a fire, a hazard or any other emergency; or
    6. Recklessly handles, displays or discharges a deadly weapon or dangerous instrument.

    B. Disorderly conduct under subsection A, paragraph 6 is a class 6 felony. Disorderly conduct under subsection A, paragraphs 1, 2, 3, 4 or 5 is a class 1 misdemeanor.

    [4]Disorderly conduct consists of:
    A. engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace; or
    B. maliciously disturbing, threatening or, in an insolent manner, intentionally touching any house occupied by any person.

    Whoever commits disorderly conduct is guilty of a petty misdemeanor.

conduct disturbed the peace and quiet of the community by causing consternation and alarm is *Florstedt*, decided fifty years ago. 1966-NMSC-208. In *Florstedt*, a gathering of "high school boys" and their cars—a caravan—blocked a dirt road, perhaps in expectation of a fight. *Id.* ¶¶ 2, 3. The *Florstedt* court, noting that the disorderly conduct statute is only violated by acts that are clearly prohibited, held that the evidence was insufficient to support a conviction. *Id.* ¶¶ 7,10-11. The *Florstedt* court stated that blocking the road was a separate, specified statutory offense and that charge was available to the prosecutors. *Id.* ¶ 9. Similarly, in this case Child was cited by Huerta for trespass and for firing the plastic BB gun within the city limits. Although Child might have committed those violations, we conclude, in the absence of record evidence to the contrary, that firing the gun on a rooftop was not clearly an act that disturbed the peace and tranquility of the community.

{12}     We have viewed the evidence in the light most favorable to the State, as required. *See Astorga*, 2015-NMSC-007, ¶ 57 (stating that sufficiency of the evidence review requires that the evidence be viewed in the light most favorable to the verdict of the factfinder). Even so, the evidence was insufficient to support the finding that Child committed disorderly conduct because Child's acts were not clearly of the kind that would tend to disturb the peace. *See Correa*, 2009-NMSC-051, ¶ 31 (stating that

an act that tends to disturb the peace is an essential element of disorderly conduct); *id.* ¶ 22 (stating that the disorderly conduct statute is to be construed narrowly so that "unless the acts complained of fall clearly within the statute, they are not disorderly" (internal quotation marks and citation omitted)). Accordingly, we reverse the finding of the district court that Child was guilty of disorderly conduct and the judgment that Child was a delinquent Child based on that finding.

**CONCLUSION**

{13}     For the reasons stated, the judgment and disposition of the children's court is reversed.

{14}     **IT IS SO ORDERED.**


_____
**STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Judge**


_____
**TIMOTHY L. GARCIA, Judge**